IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bruce Glenn, ) | Civil Action No. 2:14-cv-1116-RBH-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Bruce Glenn, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 48 years old on his alleged disability onset date of February 1, 2010. (R. at 15, 24.) Plaintiff claims disability due to, *inter alia*, malignant hypertension, cardiomyopathy, stage II chronic kidney disease, glaucoma, and substance abuse. (R. at 17.) The Administrative Law Judge (ALJ) found that Plaintiff has a limited education and past relevant work as a coding machine operator, forklift operator, material handler, and inspector molding machine operator. (R. at 24, 56.)

Plaintiff filed an application for DIB on August 22, 2011. (R. at 15.) After his application was denied initially and on reconsideration, a hearing was held before an ALJ on October 30, 2012. (R. at 15.) In a decision dated December 19, 2012, the ALJ found that Plaintiff was not disabled. (R. at

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

15-26.) The Appeals Council denied Plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> (2)     The claimant has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)     The claimant has the following severe impairments: malignant hypertension, cardiomyopathy, stage II chronic kidney disease, glaucoma, and substance abuse (20 CFR 404.1520(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b), more specifically as follows: The claimant is limited to lifting up to 20 pounds occasionally and lifting or carrying up to 10 pounds frequently, standing or walking for approximately 4 hours per 8-hour workday and sitting for approximately 4-6 hours per 8-hour workday with normal breaks. He requires a sit/stand option, as follows: he is allowed to sit or stand, consistent with the exertional limits described above; cannot be off task more than 5% of the work period (this off task time is above and beyond regular, normal breaks, calculates to 3 minutes per hour for each 2 hour segment of work time, contemplates being off task during, *inter alia*, change from sit to stand, and is scattered through each 2 hour segment of work time); cannot leave work station; can sit in up to 60 minute time segments at any one time; and can stand/walk in up to 45 minute time segments at any one time to relive [sic] sitting and to perform job requirements. He can frequently push or pull with the upper extremities bilaterally, frequently operate foot controls with the lower extremities bilaterally, never climb ladders, ropes, scaffolds, and occasionally climb ramps or stairs, with no more than 4–6 steps at any one time and with the assistance of a single hand rail. He is limited to balancing one-half of the work period (4 out of 8 hours) and occasional stooping, kneeling, and crawling, and no crouching. He needs to avoid concentrated exposure to extreme cold, extreme heat, environmental irritants such

> as fumes, odors, dusts, and gases, exposure to poorly ventilated areas, exposure to chemicals, and hazards (e.g., use of moving machinery, and unprotected heights). He is limited to occupations which do not involve the handling, sale or preparation of alcoholic beverages or having access to narcotic drugs.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on October 9, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).
>
> (8) The claimant has limited education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant was "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2010, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner

3

must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  See 20 C.F.R. § 404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff asserts the ALJ "improperly ignored" the opinion of Dr. Loring, an examining psychologist. (Dkt. No. 15 at 15 of 20.) Plaintiff contends that the ALJ "never indicated the weight he assigned to Dr. Loring's opinions," which is "contrary to the Commissioner's own rulings and regulations." (Id. at 17 of 20.) According to Plaintiff, the "critical question in this case is literacy." (Dkt. No. 17 at 9 of 11.) Plaintiff states, "[I]f we add to the findings of the ALJ that [Plaintiff] is illiterate, the grids would direct a finding of disability. And Dr. Caleb Loring, Psy.D. provided a reasoned opinion that [Plaintiff] was illiterate . . . ." (Dkt. No. 15 at 15 of 20.)

Dr. Loring saw Plaintiff on April 20, 2012 and administered the Word Reading Subtest of the Wide Range Achievement Test 4th edition (WRAT-4). (See R. at 325-26.) Dr. Loring described the results of that test as follows:

> On the Word Reading Subtest [Plaintiff] obtained a standard score of 55, which is in the extremely low range and translates to a grade equivalency of 1.3 in reading. [Plaintiff's] ability to read is consistent with that of a first grader. This score is consistent with his past placement in a special education school and suggests that [Plaintiff] is only able to read the simplest of words, like "cat." This performance is consistent with [Plaintiff's] inability to fill out the office paperwork presented to him as well as his past vocational history.

(R. at 326.) The "summary" section of Dr. Loring's report states,

5

> Results indicate that [Plaintiff] would not be able to read low-literacy materials designed for adults. He would need repeated oral instructions, materials made mostly of illustrations, or audio/video tapes to learn tasks. He could not fill out the office paperwork independently during his assessment . . . . He was able to sign and print his name. [Plaintiff] presents as someone who is functionally illiterate who would be unable to read and comprehend simple instructions and lists. He evidenced good effort and tried to sound out words he was not capable of reading. He did not give up easily. The scores obtained during this assessment appear to be consistent with his academic placement history as well as his vocational history in that the jobs that [Plaintiff] has possessed in the past do not appear to be the sort that would require reading skills.

(R. at 326.) Dr. Loring concluded that Plaintiff was "illiterate" under the following definition:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(R. at 324.)

The core issue in this case is whether the ALJ erred when he did not find Plaintiff "illiterate." (See R. at 24.) As noted above, Plaintiff asserts the ALJ "improperly ignored" and "never indicated the weight he assigned" to Dr. Loring's opinions. (Dkt. No. 15 at 15-17 of 20.) The undersigned is not persuaded by Plaintiff's arguments and recommends affirming the Commissioner's decision. In his decision, the ALJ stated, *inter alia*,

> The claimant is . . . described as functionally illiterate. (Exhibit 9F) In a completed reading assessment dated April 20, 2012, the claimant reportedly has a history of a learning disability requiring special education and testing results on the Wide Range Achievement Test, 4th edition (WRAT-4) revealed a standard score of 55 on the Word Reading subtest, translating to a grade equivalency of a first grader. (Exhibit 9F)
> . . .
> It is also noted despite his history of not knowing how to read or write, the claimant has significant adaptive functional skills which not only have allowed him to engage in past work activity (including work classified as semi-skilled and skilled), but enables him to perform an array of daily activities. He does not have a driver's license purportedly because "he cannot get it", but knows how to drive. (Exhibit 9F, p. 2) He can write and sign his name, as well as read "everyday things like a stop sign or restroom signs." (Exhibit 9F, p.2)
> . . .
> In sum, the above residual functional capacity is supported by the medical record as a whole and with significant weight accorded to the assessments of the state agency

> medical consultants and described adaptive functioning of the claimant by Dr. Loring at Exhibit 9F.

(R. at 18, 22, 24.)

The undersigned recommends finding that the Commissioner's decision is supported by substantial evidence. Plaintiff asserts that Grid 202.09 applies. (Dkt. No. 17 at 2-4 of 11.) This rule provides that someone who is limited to light work, who is closely approaching advanced age, who is illiterate or unable to communicate in English, and who has unskilled past relevant work or no past relevant work should be found to be disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09. In the instant case, however, Plaintiff has past relevant work as skilled, semi-skilled, and unskilled; the ALJ stated, *inter alia*,

> The claimant has past relevant work as a coding machine operator (DOT 920.685-078) medium, unskilled (SVP 2); forklift operator (DOT 921.683-050) medium, semi-skilled (SVP 3); material handler (DOT 929.687-030) medium, semi-skilled (SVP 3); and inspector molding machine operator (DOT 556.382-014) medium, skilled (SVP 5).

(R. at 24.) Grid Rule 202.09 applies where a claimant's previous work experience is "unskilled or none." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09. Because Plaintiff's past relevant work includes skilled and semi-skilled work, Plaintiff does not meet the criteria for Grid Rule 202.09. See SSR 83-11, 1983 WL 31252, at *1 ("The criteria of a rule are met only where they are exactly met."); see also Johnson v. Comm'r, 97 Fed. App'x 539, 542 (6th Cir. 2004) ("Rule 202.09 only applies where the claimant (1) is illiterate or unable to communicate in English and (2) has either no previous work experience or experience only as an unskilled worker."); Goldsboro v. Comm'r, Civ. A. No. SAG-14-153, 2014 WL 6893772, at *3 (D. Md. Dec. 4, 2014) ("[A]s the Appeals Council correctly noted, Mr. Goldsboro's previous work experience was skilled/semi-skilled, and thus, neither Rule 201.17 nor Rule 202.09 applies, even if he is illiterate. 20 C.F.R. Pt. 404, Subpt. P, Appx. 2 §§ 201.17, 202.09. Accordingly, the ALJ properly sought the testimony of a VE to determine whether Mr. Goldsboro was capable of other work."); Caudill v. Astrue, Civ. A. No. 7:06-028-DCR, 2009 WL 3270491, at *4 (E.D. Ky. Oct. 9, 2009) ("Rule 202.09 does not apply because Caudill does not have unskilled or no work experience. Rather, the vocational expert found that Caudill's past work was semiskilled but that the skills were not transferable. [Tr., p. 548] 'Skilled or semiskilled—skills

7

not transferable' is a separate category under the regulations. See, e.g., 20 C.F.R. § 404P app. 2, tbl.2, R. 202.11. Thus, the ALJ did not err in not applying Rule 202.09.")[2] Because Rule 202.09 was not applicable, the ALJ appropriately relied on the testimony of a vocational expert.

Furthermore, Rule 202.09 directs a finding of "disabled" only if Plaintiff meets the definition of "illiterate." The Regulations apply the following categories to evaluate Plaintiff's educational level:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. **Generally, an illiterate person has had little or no formal schooling**.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. **We generally consider that formal schooling at a 6th grade level or less is a marginal education**.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. **We generally consider that a 7th grade through the 11th grade level of formal education is a limited education**.

20 C.F.R. § 404.1564(b) (emphasis added). In his Disability Report, Plaintiff reported that he completed the eleventh grade through special education classes as well as a vocational school. (R. at 149.) It appears he reported a different educational level to Dr. Loring, as Dr. Loring's report indicates Plaintiff finished the ninth grade through special education classes. (R. at 325-26.) Plaintiff also has significant work experience at the semi-skilled and skilled level, (R. at 24, 149), and it is worth noting that in concluding "there are jobs that exist in significant numbers in the national economy that the claimant can perform," the vocational expert testified that the light jobs he identified could be performed by Plaintiff regardless of literacy because the "jobs are unskilled and really are hands on kinds of jobs" (R. at 83; see also R. at 79, 84).

---

[2]Plaintiff's argument that previous work experience of "skilled or semi-skilled-skills not transferable" should be treated the same under the Grids as "unskilled or none" has some appeal but overlooks the fact that the Grids themselves plainly treat the two categories differently. See 20 C.F.R. Pt. 404, Subpt. P, App. 2; see also Caudill v. Astrue, Civ. A. No. 7:06-028-DCR., 2009 WL 3270491, at *4 (E.D. Ky. Oct. 9, 2009).

On this record, even if the Plaintiff's education level should have been considered marginal, the ALJ's conclusion that Plaintiff is not illiterate is supported by substantial evidence.[3] See Glenn v. Sec'y of Health & Human Servs., 814 F.2d 387, 391 (7th Cir. 1987) (Posner, J.) ("For the severely functional purpose of identifying a class of workers with negligible employment opportunities, the standard for literacy has been pitched quite low, and appropriately so; for the question is only whether the applicant is so deficient in ability to read and write that he cannot obtain even an unskilled job."); Hamblin v. Heckler, 787 F.2d 590, at *3 (6th Cir. 1986) (unpublished table decision) (substantial evidence supports finding that the "plaintiff's actual educational level was at least 'marginal' under the Regulations" where the plaintiff "only completed three to four years of formal education" and his reading abilities "are at about a second grade level" but, *inter alia*, the plaintiff "worked for more than fifteen years as an arc welder, a semiskilled job, and testified that he was able to learn the requirements of his job in a matter of weeks"); Dozier v. Comm'r, 736 F. Supp. 2d 1024, 1038-39 (D.S.C. 2010) (the ALJ did not err by finding the plaintiff had a "limited education" for purposes of utilizing the grids where the plaintiff's past relevant work was semi-skilled, he could drive, he completed the tenth grade, and he testified he could read "just a little" and write "pretty good" even where doctor's report indicated that the plaintiff's "reading capacity is clinically supportive of actual and functional illiteracy" and that plaintiff "[e]ffectively . . . can not read" and tested "at less than second grade level"); Henry v. Astrue, Civ. A. No. 3:08-cv-00862, 2010 WL 3943739, at *11 (S.D. W. Va. Oct. 5, 2010) (affirming the Commissioner's decision where the plaintiff "offers no evidence that he 'cannot read or write a simple message such as instructions or inventory lists'" but instead offered "evidence indicating only that he had *difficulty* with reading and with reading comprehension" and the ALJ confirmed that "a person with all [of plaintiff's] limitations, except who is illiterate in the English language, could perform the jobs" identified). The undersigned therefore recommends the Commissioner's decision be affirmed.

---

[3] Although Plaintiff argues the ALJ "improperly ignored" and "never indicated the weight he assigned" to Dr. Loring's opinions, the undersigned disagrees. The ALJ stated that he gave "significant weight" to Dr. Loring's description of Plaintiff's "adaptive functioning," and in finding that Plaintiff "has a limited education," did not credit Dr. Loring's opinion that Plaintiff was illiterate. (See R. at 24.)

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 9, 2015
Charleston, South Carolina