IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bruce Glenn, | ) | Civil Action No.: 2:14-cv-1116-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Mary Gordon Baker.[1]  Plaintiff Bruce Glenn brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").  In her R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

### FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on August 22, 2011, alleging a disability onset date of February 1, 2010.   The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held October 30, 2012.  Plaintiff, represented by an attorney, appeared and testified at the hearing.  A vocational expert also testified.  The ALJ issued a decision dated December 19, 2012, finding that Plaintiff was not disabled.  The ALJ's overall findings were as follows:

---

[1]     In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2.      The claimant has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: malignant hypertension, cardiomyopathy, stage II chronic kidney disease, glaucoma, and substance abuse (20 CFR 404.1520(c)).

. . .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b), more specifically as follows: The claimant is limited to lifting up to 20 pounds occasionally and lifting or carrying up to 10 pounds frequently, standing or walking for approximately 4 hours per 8-hour workday and sitting for approximately 4-6 hours per 8-hour workday with normal breaks.  He requires a sit/stand option, as follows: he is allowed to sit or stand, consistent with the exertional limits described above; cannot be off task more than 5% of the work period (this off task time is above and beyond regular, normal breaks, calculates to 3 minutes per hour for each 2 hour segment of work time, contemplates being off task during *inter alia*, change from sit to stand, and is scattered through each 2 hour segment of work time); cannot leave work station; can sit in up to 60 minute time segments at any one time; and can stand/walk in up to 45 minute time segments at any one time to relive [sic] sitting and to perform job requirements.  He can frequently push or pull with the upper extremities bilaterally, frequently operate foot controls with the lower extremities bilaterally, never climb ladders, ropes, scaffolds, and occasionally climb ramps or stairs, with no more than 4-6 steps at any one time and with the assistance of a single hand rail.  He is limited to balancing one-half of the work period (4 out of 8 hours) and occasional stooping, kneeling, and crawling, and no crouching.  He needs to avoid concentrated exposure to extreme cold, extreme heat, environmental irritants such as fumes, odors, dusts, and gases, exposure to poorly ventilated areas, exposure to chemicals, and hazards (e.g. use of moving machinery,

and unprotected heights).  He is limited to occupations which do not
involve the handling, sale or preparation of alcoholic beverages or
access to narcotic drugs.

. . .

6.    The claimant is unable to perform any past relevant work (20
CFR 404.1565).

. . .

7.    The claimant was born on October 9, 1961 and was 48 years
old, which is defined as a younger individual age 18-49, on the
alleged disability onset date.  The claimant subsequently changed age
category to closely approaching advanced age (20 CFR 404.1563).

8.    The claimant has limited education and is able to
communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the
determination of disability because using the Medical-Vocational
Rules as a framework supports a finding that the claimant is "not
disabled," whether or not the claimant has transferable job skills (See
SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

. . .

10.    Considering the claimant's age, education, work experience,
and residual functional capacity, there are jobs that exist in significant
numbers in the national economy that the claimant can perform (20
CFR 404.1569 and 404.1569(a)).

. . .

11.    The claimant has not been under a disability, as defined in the
Social Security Act, from February 1, 2010, through the date of this
decision (20 CFR 404.1520(g)).

Tr. 17–25.

The ALJ's finding became the final decision of the Commissioner when the Appeals

Council denied Plaintiff's request for further review.  On March 25, 2014, Plaintiff filed this action

seeking judicial review of the Commissioner's decision.  Compl., ECF No. 1.  Both Plaintiff and the

Commissioner filed briefs, ECF Nos. 15, 16, 17, and the Magistrate Judge issued her Report and

Recommendation ("R&R") on June 9, 2015, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 24.  Plaintiff filed timely objections to the R&R on June 26, 2015, Pl.'s Objs., ECF No. 25, and the Commissioner replied on July 2, 2015, Def.'s Reply, ECF No. 27.

### STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one.  The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968).  The Court "'must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*)); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree . . . ."). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a

sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must "'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note)).

## DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

ANALYSIS

The Magistrate Judge recommended affirming the decision of the Commissioner.

Specifically, the Magistrate Judge concluded that (1) the ALJ did not err in finding that the claimant

was not illiterate, but had a limited education, and (2) the ALJ did not err in finding that the

Plaintiff's work experience included skilled and semi-skilled work, and thus Grid Rule 202.09 did

not apply.  In his objections, Plaintiff argues that the Magistrate Judge erred in recommending

finding that the ALJ properly assessed Plaintiff's illiteracy, and thus his disability.  For the reasons

explained below, the Court rejects the Report and Recommendation of the Magistrate Judge and

finds that the ALJ's decision is not supported by substantial evidence.  The Court reverses the

ALJ's findings and remands for further proceedings consistent with this opinion.

**Plaintiff's Arguments**

Plaintiff argues the ALJ erred in not finding him illiterate, and thus disabled.  Specifically,

Plaintiff argues that Grid Rule 202.09 (Medical Vocational Rules) requires that Plaintiff be found

disabled, if his skills from previous skilled and semi-skilled positions are non-transferable, and if he

is found illiterate.  Plaintiff argues that, in fact, he is illiterate and the ALJ's finding that

transferability of job skills was not material to disability was in error.  Plaintiff argues that the ALJ

did not sufficiently weigh the opinion of Plaintiff's examining psychologist that Plaintiff was

illiterate, nor sufficiently explain why no weight was given to that conclusion.  Plaintiff argues that

if he is illiterate and his skills are non-transferrable, then the "grids" require a finding of disability.

**I.      Disability under Grid Rule 202.09**

Where a claimant is closely approaching advanced age, illiterate or unable to communicate

in English, and has unskilled or no past work experience, Grid Rule 202.09 dictates a finding that

claimant is disabled.  20 C.F.R. 404, Subpart P, App'x 2, § 202.09.  The ALJ found that Plaintiff

had "limited education and is able to communicate in English." [ALJ Decision, ECF# 13-2, at 25].

The ALJ also found that Plaintiff's past relevant work involved skilled and semi-skilled work. *Id.*

The ALJ found that the transferability of job skills was not material to the determination of

disability "because using the Medical-Vocational Rules as a framework supports a finding that the

claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id.*

### a) Plaintiff's Education/Literacy

Plaintiff argues that the ALJ did not accord sufficient weight to examining psychologist Dr.

Loring's opinion that Plaintiff was functionally illiterate, and did not sufficiently explain why he

gave no weight to Dr. Loring's opinion on Plaintiff's literacy.  Dr. Loring, a non-treating medical

source, performed a reading assessment on Plaintiff on April 20, 2012, and issued the following

opinion:

> Results indicate that Mr. Glenn would not be able to read
> low-literacy materials designed for adults.  He would need
> repeated oral instructions, materials made mostly of
> illustrations, or audio/video tapes to learn tasks.  He was
> able to sign and print his name.  Mr. Glenn presents as
> someone who is functionally illiterate who would be unable
> to read and comprehend simple instructions and lists.  He
> evidenced good effort and tried to sound out words he was
> not capable of reading.  He did not give up easily.  The
> scores obtained during this assessment appear to be
> consistent with his academic placement history as well as
> his vocational history in that the jobs Mr. Glenn has
> possessed in the past do not appear to be the sort that would
> require reading skills.

[Dr. Loring Opinion, ECF# 13-8, at 33].  On a separate form, Dr. Loring responded "Yes" to the

question, "[i]s Bruce Glenn illiterate under the following definition: Illiteracy means the inability to

read or write.  We consider someone illiterate if the person cannot read or write a simple message

such as instructions or inventory lists even though the person can sign his or her name.  Generally, an illiterate person has had little or no formal schooling." *Id.* At 31.

Under the Social Security regulations, "illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1).  Therefore, in Dr. Loring's opinion, Plaintiff is illiterate using the definition of illiteracy found in § 404.1564(b)(1) of the Social Security regulations.

The ALJ stated that he gave significant weight to the "described adaptive functioning of the claimant by Dr. Loring."[2] [ALJ Decision, ECF# 13-2, at 25].  The ALJ did not, however, explain the weight given to Dr. Loring's conclusion that Plaintiff was "illiterate" or provide any reasons for rejecting it.  Reviewing courts "cannot determine if findings are supported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).  The ALJ was required to consider Dr. Loring's opinion and "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record"); *Hardwick v. Astrue*, 782 F. Supp. 2d 1170, 1178 (E.D. Wash. 2011) (stating that "if the medical source is an examining or treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting an uncontradicted opinion").  Because the ALJ did not indicate the weight given to Dr. Loring's

---

[2]  The ALJ's reference to "adaptive functioning" in Dr. Loring's opinion is curious since it does not appear that Dr. Loring's opinion makes any findings with respect to adaptive functioning.

opinion and failed to provide specific, legitimate reasons for rejecting it, this Court cannot say that the ALJ's decision is supported by substantial evidence.

### b) Past Work Experience

As indicated above, where a claimant is closely approaching advanced age, illiterate or unable to communicate in English, and has unskilled or no past work experience, Grid Rule 202.09 requires a finding that the claimant is disabled. 20 C.F.R. 404, Subpart P, App'x 2, § 202.09. The ALJ found that Plaintiff had engaged in past work "classified as skilled and semi-skilled," and specifically noted two semi-skilled and one skilled positions Plaintiff had held. [ALJ Decision, ECF# 13-2, at 25]. The ALJ did not make any findings concerning the transferability of Plaintiff's job skills but instead found that the transferability of job skills was not material to the determination of disability "because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*. For purposes of establishing disability under Grid Rule 202.09, the transferability of Plaintiff's job skills becomes relevant, however, if Plaintiff can establish that he is illiterate. *See, e.g. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) (holding that "in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history"); *Barillaro v. Comm'r of Soc. Sec.*, 216 F. Supp. 2d 121, 130-31 (E.D.N.Y. 2002); *Vintson v. Astrue*, No. CV-12-S-767-J, 2013 WL 24290, at *3 (N.D. Ala. Jan. 2, 2013); *Trevino v. Astrue*, No. B-08-152, 2009 WL 2886317, at *6 (S.D. Tex. Sept. 4, 2009).

Plaintiff argues that past skilled or semi-skilled work where the skills are not transferable is the same as unskilled previous work. ECF No. 25 at 2-6. The Social Security regulations specifically provide that "[i]f you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled." 20 C.F.R. § 404.1565(a). Social

Security Ruling 82–41 also clearly states the Commissioner's intent to treat an unskilled work history and a skilled or semi-skilled work history with no transferable skills as equivalent:

> [A] person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs. *The table rules in Appendix 2 are consistent with the provisions regarding skills because the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable.*

Soc. Sec. Rul. 82–41 at ¶ 2(a) (emphasis added).

The Magistrate Judge rejected Plaintiff's argument that a skilled or semi-skilled work history with no transferable skills should be treated the same as unskilled history concluding that the Grids themselves treat the two categories differently. Indeed, the Grids have separate categories for unskilled work history and skilled or semi-skilled – skills not transferable. *See* Medical Vocational (Grid) Rules, 20 C.F.R. pt. 404, subpt. P, app. 2. However, neither the Magistrate Judge nor the Commissioner attempts to reconcile their conclusion with 20 C.F.R. § 404.1565(a) or Social Security Ruling 82-41. The case relied on by the Magistrate Judge, Caudill v. Astrue, No. 7:06-028-DCR, 2009 WL 3270491, at *4 (E.D.Ky. Oct. 9, 2009), also makes no attempt to reconcile the conflict between its holding and 20 C.F.R. § 404.1565(a) or Social Security Ruling 82-41.

In *Silveira v. Apfel*, the Ninth Circuit, relying on 20 C.F.R. § 404.1565(a), Social Security Rule 82-41, and the narrative regulations in the medical vocational guidelines, held that "[a]ll grid rules are to be interpreted as treating a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history." 204 F.3d 1257, 1261 (9th Cir. 2000). The *Silveira* decision and the district court opinions following *Silveira* are consistent with the Social Security Regulation and administrative ruling referenced above. *See Harris v. Astrue*, No. 2:08–cv–0667, 2008 WL 5339814, *8 (W.D.Pa. Dec. 22, 2008) ("Therefore, in applying the proper regulations, it

is clear that the ALJ should have treated Plaintiff's skilled work history as unskilled because he made the specific finding that Plaintiff did not have any transferable skills."); *Mosleh v. Barnhart*, No. CIV.A.01–418–SLR, 2002 WL 31202674, *10 (D.Del. Sept. 26, 2002) ("Grid rule 201.17, read in conjunction with the regulation, also places individuals within the rule who possess no transferable skills."); *Barillaro v. Comm'r of Soc. Sec.*, 216 F. Supp. 2d 121, 130-31 (E.D.N.Y. 2002); *Vintson v. Astrue*, No. CV-12-S-767-J, 2013 WL 24290, at *3 (N.D. Ala. Jan. 2, 2013); *Trevino v. Astrue*, No. B-08-152, 2009 WL 2886317, at *6 (S.D. Tex. Sept. 4, 2009). The Court agrees with the conclusion of the 9th Circuit in *Silveira* – that skilled or semi-skilled work history with no transferable skills is equivalent to an unskilled work history under the applicable Social Security regulations and rulings.

The Commissioner does not appear to dispute that Plaintiff's skills are not transferable. Instead, Commissioner argues that Plaintiff is not disabled under Grid Rule 202.09 because substantial evidence exists that Plaintiff is not illiterate, but falls into the "limited or less" education category.

As stated above, the ALJ erred by failing to assign weight and provide specific, legitimate reasons for rejecting Dr. Loring's opinion that Plaintiff was illiterate. As a result, the Court finds that the ALJ's decision is not supported by substantial evidence. In light of the ALJ's failure to assign weight and provide specific reasons for rejecting Dr. Loring's opinion, the Court also finds that the case should be remanded for the ALJ to: 1) consider and explain the weight given to Dr. Loring's opinion that Plaintiff is illiterate; 2) determine whether Plaintiff is disabled under Grid Rule 202.09; and 3) determine whether Plaintiff's job skills are non-transferrable with the understanding that skilled or semi-skilled work history with no transferable skills is equivalent to an

unskilled work history under the Grid Rules pursuant to 20 C.F.R. § 404.1565(a) and Social

Security Rule 82-41.

## CONCLUSION

The Court has thoroughly reviewed the record, the briefs, the Magistrate Judge's R & R,

Plaintiff's objections to the R & R, Defendant's reply to the objections, and applicable law.  For the

foregoing reasons, the Court respectfully rejects the R&R of the Magistrate Judge.  The

Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the

case is **REMANDED** to the Commissioner for further proceedings as set forth herein.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
August 14, 2015